**SheppardMullin**

Sheppard, Mullin, Richter & Hampton LLP
30 Rockefeller Plaza
New York, New York 10112-0015
212.653.8700 main
212.653.8701 fax
www.sheppardmullin.com

Robert S. Friedman
212.634.3058 direct
rfriedman@sheppardmullin.com

April 11, 2025

**VIA ECF**

Honorable P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl St.
New York, NY 10007-1312

Re:   *Multi-State Partnership for Prevention, LLC v. Deloitte Consulting LLP,*
       Case No. 1:24-cv-09013-PKC

Dear Judge Castel:

We represent Defendant Deloitte Consulting LLP ("Deloitte") in connection with the above-referenced action commenced by Plaintiff Multi-State Partnership for Prevention, LLC ("MSPP"). We submit this pre-motion letter in accordance with Section 3.A.i of Your Honor's Individual Practices to describe the expected bases of Deloitte's anticipated motion to dismiss MSPP's second amended complaint (ECF No. 30) (the "Complaint" or "Compl.") pursuant to Federal Rule of Civil Procedure 12(b)(6).

An Initial Conference before the Court is scheduled for May 16, 2025. (*See* ECF No. 29.) In accordance with Section 3.A.ii of Your Honor's Individual Practices, Deloitte proposes the following briefing schedule for its anticipated motion to dismiss: (i) Deloitte will have 21 days to file its motion to dismiss; (ii) MSPP will have 14 days after service of the moving papers to oppose Deloitte's motion; (iii) Deloitte will have 7 days to reply to MSPP's opposition.

Over the past four years, MSSP has made vague assertions, unsubstantiated allegations, and meritless threats, all while not producing a scintilla of evidence on liability or any basis upon which to seek the exorbitant damages alleged. Despite numerous efforts to resolve this dispute outside of court, MSPP filed this suit and then amended its complaint several times, adding and changing allegations, including the addition of an antitrust claim. At their core, these allegations boil down to a single flow chart that is clearly not a trade secret under federal or state law, was publicly disclosed many times over, and is so basic and obvious that there is no value as a matter of law. MSPP has interposed a laundry list of claims premised on this flow chart, including claims under the federal Defend Trade Secret Act ("DTSA"), the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and the Sherman Act. To be clear, there is no allegation that any actual solution or technology was misappropriated. As explained further below, our forthcoming motion will demonstrate that these claims are meritless and deficient on their face, and should be dismissed pursuant to Rule 12(b)(6).

**I.     MSPP's Allegations**

MSPP is a business owned by Tiffany Tate. (Compl. ¶ 9.) According to the Complaint, as of August 2017, MSPP sold software applications called ReadiConsent and ClinicWizard. (*Id*.

**SheppardMullin**

Hon. P. Kevin Castel
April 11, 2025
Page 2

¶ 10.)  MSPP claims that the combination of ReadiConsent and ClinicWizard comprises a "mass vaccination tool."  (*Id*.)  MSPP also claims it developed vaccination software called PrepMod, which it asserts builds upon ReadiConsent and ClinicWizard.  (*Id*. ¶ 19.)

MSPP asserts that, following the outbreak of COVID-19 in March 2020, both the American Immunization Registry Association ("AIRA") and the Centers for Disease Control and Prevention ("CDC") contacted MSPP about using PrepMod in response to the pandemic.  (*Id*. ¶¶ 25, 28.)  MSPP alleges that it provided a live presentation of PrepMod to an industry group, the AIRA, on April 21, 2020.  (*Id*. ¶ 29.)  MSPP alleges that it also provided a live demonstration of PrepMod to the CDC on that same date.  (*Id*. ¶ 306.)

MSPP alleges, on information and belief only, that, sometime "before April 27, 2020," Deloitte obtained access to the substance of the live demonstration of PrepMod that MSPP had presented to the CDC on April 21, 2020 (the same day that MSPP presented PrepMod to the AIRA).  (*Id*. ¶ 309.)  MSPP further alleges that it presented PrepMod to the CDC and the CDC's contracted consultant, Deloitte, on April 27, 2020.  (*Id*. ¶¶ 36-37.)  This presentation allegedly contained MSPP's purported trade secrets and other proprietary information.  (*Id*. ¶¶ 37-38.)  MSPP alleges it engaged in additional exchanges with the CDC regarding PrepMod until approximately May 6, 2020.  (*Id*. ¶¶ 47-63.)

On or about May 11, 2020, the CDC announced it would provide a mass COVID vaccination platform.  (*Id*. ¶ 65.)  MSPP alleges that, from at least May 11, 2020, until around May 27, 2020, "Ms. Tate believed that the CDC intended to engage MSPP for use of PrepMod, and that MSPP was the vendor the CDC had identified."  (*Id*. ¶ 69.)  MSPP learned on May 28, 2020, however, that the CDC selected Deloitte to lead the VAMS program.  (*See id*. ¶ 98.)  MSPP's Complaint alleges that Deloitte's program incorporated a proprietary feature of PrepMod and "multiple other trade secrets and confidential information into VAMS[.]"  (*Id*. ¶¶ 107-108.)  MSPP further alleges that Deloitte used MSPP's "trade secrets and other proprietary and/or confidential information to create VAMS."  (*Id*. ¶ 123.)

Based on the above allegations, MSPP asserts twelve causes of action against Deloitte: (1) trade secret misappropriation under the DTSA; (2) trade secret misappropriation under the Maryland, Florida, Virginia, and/or District of Columbia Uniform Trade Secrets Acts ("UTSA"); (3) common law misappropriation of trade secrets;[1] (4) common law misappropriation of confidential information; (5) RICO violations; (6) tortious interference; (7) unfair competition; (8) fraud; (9) civil conspiracy; (10) unjust enrichment; (11) breach of contracts; and (12) violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

II.    **MSPP Has No Viable Claims Against Deloitte**

Deloitte's forthcoming Motion to Dismiss will demonstrate that MSPP's claims against Deloitte are facially defective and warrant dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

---

[1] MSPP's Complaint does not identify under which state's law any of the common law claims are brought.

**SheppardMullin**

Hon. P. Kevin Castel
April 11, 2025
Page 3

### a. The Trade Secrets Claims Are Untimely

As an initial matter, MSPP's claims for trade secret misappropriation under the DTSA and the state UTSAs should be dismissed as untimely. The DTSA and each of the UTSAs cited by MSPP have a statute of limitations of three years. *See* 18 U.S.C. § 1836(d); Md. Code Ann., Com. Law § 11-1206(a); Fla. Stat. Ann. § 688.007 (West); Va. Code Ann. § 59.1-340 (West); D.C. Code Ann. § 36-406 (West). Based upon the allegations in the Complaint, MSPP's claims accrued at the latest on May 28, 2020, the date upon which MSPP learned of the VAMS contract award to Deloitte. (*See* Compl. ¶¶ 95-98.) While MSPP and Deloitte entered into a tolling agreement on May 30, 2023, this was over three years after MSPP's claims accrued. Likewise, MSPP's conclusory assertion in the Complaint that it "had no reason to believe" of Deloitte's alleged misconduct "until August 2020" (*id.* at 3) is belied by the balance of MSPP's allegations in the Complaint, and is therefore not plausible. Indeed, MSPP had not included an allegation of notice in August 2020 in the original version of its Complaint, confirming that it was added to the Complaint only to prop up otherwise time-barred claims. (*Compare* Original Complaint (ECF No. 1) at 3 *with* Compl. at 3.)

Additionally, while MSPP's Complaint does not bother to specify which state's laws govern its common law claims, at least several of them are time barred under potentially applicable state statutes of limitations.[2]

Accordingly, the statute of limitations has run on MSPP's DTSA, state UTSA, and at least certain of the common law claims (depending on the governing law), and they should be dismissed.

### b. MSPP Has Not Pleaded Viable DTSA or UTSA Claims

The trade secrets claims also fail because they do not state a claim. A plaintiff alleging trade secret misappropriation under the DTSA must plausibly allege that (1) it possessed a trade secret, and (2) the defendant misappropriated the trade secret. *Inv. Sci., LLC v. Oath Holdings Inc.*, No. 20 CIV. 8159 (GBD), 2021 WL 3541152, at *3 (S.D.N.Y. Aug. 11, 2021). The elements for misappropriation under the UTSAs are substantively the same as under the DTSA and, as such, the federal DTSA and state UTSA claims can be analyzed together. *See, e.g.*, *Philips N. Am. LLC v. Hayes*, No. CV ELH-20-1409, 2020 WL 5407796, at *7 (D. Md. Sept. 9, 2020). To qualify as a "trade secret" there must be finance, scientific, technical or engineering information that (1) the owner thereof has taken reasonable measures to keep such information secret, and (2) has economic value because it is not 'generally known.'" *See UrthTech LLC v. GOJO Indus., Inc.*, No. 22-CV-6727 (PKC), 2023 WL 4640995, at *9 (S.D.N.Y. July 20, 2023) (internal citations and quotation marks omitted).

Here, MSPP has failed to allege the existence of a trade secret. Under the DTSA, plaintiffs must "plead their trade secrets with sufficient specificity to inform the defendants of what they

---

[2] *See* Md. Code Ann., Cts. & Jud. Proc. § 5-101 (West); Va. Code Ann. § 8.01-243(a) (West); *Wachtel v. Jordan*, No. CL-2024-254, 2024 WL 4608782, at *1 (Va. Cir. Ct. Oct. 25, 2024); Va. Code Ann § 8.01-246(4) D.C. Code Ann. § 12-301 (West).

**SheppardMullin**

Hon. P. Kevin Castel
April 11, 2025
Page 4

are alleged to have misappropriated." *Principia Partners LLC v. Swap Fin. Grp., LLC*, No. 18 CIV. 7998 (AT), 2019 WL 4688711, at *3 (S.D.N.Y. Sept. 26, 2019). MSPP's Complaint, however, does not identify with any specificity what trade secrets Deloitte allegedly misappropriated. Instead, and at most, MSPP's misappropriation claim points to a list of generalized categories of information that lack specificity or particularity. (*See* Compl. ¶ 162.) Courts in this District repeatedly have held that this conclusory listing of general categories of information fails to put a defendant on notice of what it allegedly misappropriated and is therefore inadequate to plead the existence of a trade secret. *See Intrepid Fin. Partners, LLC v. Fernandez*, No. 20 CV 9779-LTS, 2020 WL 7774478, at *4 (S.D.N.Y. Dec. 30, 2020) ("[G]eneral and vague references to methods, processes, interpretation, programs, and data configuration protocols do not plausibly support the existence of a trade secret without supportive facts[.]"); *Lawrence v. NYC Med. Prac., P.C.*, No. 1:18-CV-8649-GHW, 2019 WL 4194576, at *5 (S.D.N.Y. Sept. 3, 2019) ("Listing general categories of information, as Defendants have done here, does not adequately plead the existence of a trade secret.").

Further, the information that MSPP alleges was shared with Deloitte did not contain trade secret information. MSPP alleges that its purported trade secrets were set forth in written materials it shared with the CDC and/or Deloitte during and after the April 27, 2020 presentation, including a slide presentation allegedly demonstrating at a high level how PrepMod works, workflows, and pricing. (*See* Compl. ¶¶ 37-38, 51-52.) Given that these documents are referenced explicitly in the Complaint, they are deemed incorporated by reference and can be properly considered on a 12(b)(6) motion. *See Atl. Neurosurgical Specialists, P.A. v. MultiPlan, Inc.*, No. 20 CIV. 10685 (LLS), 2023 WL 160084, at *4 (S.D.N.Y. Jan. 11, 2023).

Problematically for MSPP's trade secrets claims, however, *none* of these materials or types of information qualifies as a trade secret as a matter of law:

- The information in the MSPP workflow—*i.e.*, that appointments must be made and vaccinations must be reported—is obvious, generally known in the industry, and is not unique to PrepMod. ". . . [M]atters of public or general knowledge in an industry are incapable of being designated as a 'trade secret'[.]" *Johnson Controls, Inc. v. A.P.T. Critical Sys., Inc.*, 323 F. Supp. 2d 525, 537 (S.D.N.Y. 2004) (internal citations omitted).[3]

---

[3] MSPP's allegations are also factually meritless. As Deloitte advised MSPP prior to the commencement of this lawsuit, Deloitte has irrefutable evidence that, even *before* MSPP allegedly presented PrepMod to the CDC and Deloitte, Deloitte had already independently developed (and therefore already had within its own possession) an earlier version of the "CDC's Draft Workflow" identified in Paragraph 66 of the Complaint. There can be no claim for misappropriation where ideas are developed independently. *See* 18 U.S.C. § 1839(6)(B) (specifically exempting from DTSA liability materials acquired through "independent derivation"); *Wexler v. Hasbro, Inc.*, No. 20-CV-1100 (VEC), 2022 WL 743431, at *4 (S.D.N.Y. Mar. 11, 2022), *aff'd*, No. 22-741, 2023 WL 3513567 (2d Cir. May 18, 2023). It is troubling that, even after being advised of this evidence refuting the crux of MSPP's claims, MSPP nonetheless went ahead and filed this lawsuit.

**SheppardMullin**

Hon. P. Kevin Castel
April 11, 2025
Page 5

- The mere idea for an application feature, without more, is not a trade secret because it is readily apparent once the application is put in the market, and thus can be replicated. *See My Mavens, LLC v. Grubhub, Inc.*, No. 20 CIV. 4657 (PGG), 2023 WL 5237519, at *19 (S.D.N.Y. Aug. 14, 2023).

- MSPP's Complaint does not distinguish how PrepMod is different than MSPP's Readi-Consent and ClinicWizard software, which has been publicly available since 2017.

- Screenshots of PrepMod are not trade secrets because images of PrepMod's interface and features are readily available publicly online and are not a secret. *See Broker Genius, Inc. v. Zalta*, 280 F. Supp. 3d 495, 515 (S.D.N.Y. 2017) (determining that "a software's user interface is [only] a trade secret" . . . so long as the only people who can access them are bound by a duty to keep them confidential."); *see also Zirvi v. Flatley*, 433 F. Supp. 3d 448, 465 (S.D.N.Y.), *aff'd*, 838 F. App'x 582 (2d Cir. 2020) ("Courts dismiss trade secrets claims when the alleged trade secrets are not, in fact, secret[.]").

- There are no allegations in the Complaint that MSPP's "pricing information" gave MSPP any competitive advantage. *See 24 Seven, LLC v. Martinez*, No. 19-CV-7320 (VSB), 2021 WL 276654, at *8 (S.D.N.Y. Jan. 26, 2021) (dismissing misappropriation of trade secret claim where plaintiff did not allege that the pricing information is proprietary or that its pricing gave plaintiff a competitive edge). In fact, MSPP concedes that Deloitte charged more than MSPP's quoted price. (Compl. ¶ 93.)

Moreover, even *if* the information MSPP shared with Deloitte amounted to protectable trade secret information, the Complaint makes clear that Ms. Tate publicly shared live demonstrations of PrepMod containing MSPP's alleged trade secrets *before* the April 27, 2020 meeting with the CDC and Deloitte, destroying any potential trade secret protection. *See Sapir v. Rosen*, No. 20-CV-6191 (RA), 2021 WL 4482277, at *6 (S.D.N.Y. Sept. 30, 2021) ("Disclosing a trade secret to others who are under no obligation to protect the confidentiality of the information ultimately extinguishe[s] that property right.") (internal quotation marks omitted). As alleged in the Complaint, Ms. Tate presented a live demonstration of PrepMod to an industry group, AIRA, on April 21, 2020. (Compl. ¶ 29.)

MSPP further alleges that, "before Ms. Tate would disclose MSPP's proprietary, confidential and/or trade secret information, including about PrepMod, she advised her audience that the impending disclosure would comprise proprietary and confidential information that was owned by MSPP and was not to be made public or used without MSPP's express authorization." (*Id*. ¶ 30.) Merely *telling* audiences who are not sworn to secrecy or bound to a confidentiality agreement that the presentation contains "proprietary and confidential information that was owned by MSPP and was not to be made public or used without MSPP's express authorization," however, does not equate to an "obligation" on the part of the audience to keep that information confidential. Indeed, the Complaint is devoid of any allegation that industry group audience members had any legal or contractual obligation to keep the information secret, and Ms. Tate's mere announcement to the AIRA audience did not constitute adequate steps to protect the materials. *See, e.g.*, *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984) ("[I]f an individual discloses his trade secret to others who are under no obligation to protect the

confidentiality of the information . . . , his property right is extinguished."); *UrthTech LLC*, 2023 WL 4640995, at *13 ("Even if the allegations that UrthTech does not share the information outside the company and required GOJO to sign the NDA could establish reasonable security measures, the First Amended Complaint alleges that UrthTech has shared its FA formulation with outside researchers but does not indicate that such disclosures were themselves subject to confidentiality agreements."); *Sapir*, 2021 WL 4482277, at *6.

### c. MSPP's Common Law Claims Based on Misappropriation of Trade Secrets are Preempted by the State UTSA Claims

Finally, MSPP's assorted common law claims based on Deloitte's alleged misappropriation of MSPP's trade secret information are preempted by the UTSAs. Each of the state UTSAs cited by MSPP expressly preempts any other state or common law claim to the extent that it is based on the misappropriation of trade secrets. *See* Md. Code Ann., Com. Law § 11-1207 (West); Fla. Stat. Ann. § 688.008 (West); Va. Code Ann. § 59.1-341 (West); D.C. Code Ann. § 36-407 (West). Count III of the Complaint, which is solely a common law claim for misappropriation of trade secrets, is preempted by the UTSA claim and must therefore be dismissed. *See, e.g.*, *Aarow Elec. Sols. v. Tricore Sys., LLC*, 693 F. Supp. 3d 525, 538 (D. Md. 2023); *Taubenfeld v. Lasko*, 324 So. 3d 529, 543 (Fla. Dist. Ct. App. 2021); *Space Sys./Loral, LLC v. Orbital ATK, Inc.*, 306 F. Supp. 3d 845, 856 (E.D. Va. 2018); *TargetSmart Holdings, LLC v. GHP Advisors, LLC*, No. CV 19-312 (RMC), 2019 WL 4540543, at *8-9 (D.D.C. Sept. 19, 2019). Likewise, MSPP's other common law claims, to the extent based upon misappropriation of trade secrets, are similarly preempted, in whole or in part, by the UTSAs.

### d. MSPP Has Not Pleaded a Viable RICO Claim

MSPP does not allege the basic elements of a RICO claim. To avoid dismissal of a claim under the civil RICO statute, the plaintiff must plausibly allege: (1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity, as well as causation (*i.e.*, injury to business or property as a result of the RICO violation). *See Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 119 (2d Cir. 2013) (internal quotation marks omitted). To establish a "pattern" of racketeering activity, "a plaintiff must plead at least two predicate acts [from the list set forth in 18 U.S.C. § 1961(1)], and must show that the predicate acts are related and that they amount to, or pose a threat of, continuing criminal activity." *Kumaran v. Nat'l Futures Ass'n, LLC*, No. 1:20-CV-3668-GHW, 2022 WL 1805936, at *6 (S.D.N.Y. June 2, 2022) (internal quotation marks omitted)

#### i. MSPP Has Failed to Plead a RICO "Enterprise"

"[T]o establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *U1it4less, Inc. v. Fedex Corp.*, 871 F.3d 199, 205 (2d Cir. 2017) (internal quotation marks omitted). As a threshold issue, the RICO claim should be dismissed because MSPP impermissibly alleges that Deloitte is both the RICO person and the RICO enterprise. While a corporate entity such as Deloitte "can be sued as a RICO 'person' or named as a RICO

**SheppardMullin**

Hon. P. Kevin Castel
April 11, 2025
Page 7

'enterprise'" (*id.*), Deloitte "cannot be both the RICO person and the enterprise." *Id*. (internal citations and quotation marks omitted).

Yet, that is exactly what MSPP does in the Complaint by redefining the RICO enterprise to consist exclusively of Deloitte: "Deloitte is and operates an enterprise, pursuant to 18 U.S.C. § 1961(3), that is engaged in and whose activities affect interstate commerce. The Doe/Roe Defendants are employed by, agents of, or otherwise associated with the enterprise." (Compl. ¶¶ 197-198.) While the Complaint states in a conclusory fashion that the unnamed Does/Roes are "agents" of the enterprise, none of the predicate acts allegedly carried out by the enterprise clearly involves the Doe/Roe Defendants: only Deloitte is plausibly implicated. *See, e.g.*, *id.* ¶¶ 203, 216-18.) MSPP's RICO claim must fail where, as here, the RICO person and RICO enterprise are identical.

The RICO claim also fails because the Complaint fails to allege, as required, that the RICO enterprise has "an existence separate and apart from the racketeering scheme itself." *See Town of Mamakating, N.Y. v. Lamm*, No. 15-CV-2865 KBF, 2015 WL 5311265, at *9 (S.D.N.Y. Sept. 11, 2015), *aff'd sub nom. Town of Mamakating, New York v. Lamm*, 651 F. App'x 51 (2d Cir. 2016). Here, the Complaint "does not plausibly allege how Defendants existed as an association-in-fact separate and apart from the alleged RICO activity. . . . The lack of separate enterprise is fatal to the RICO claims." *Lynn v. McCormick*, No. 17-CV-1183 (CS), 2017 WL 6507112, at *5 (S.D.N.Y. Dec. 18, 2017), *aff'd*, 760 F. App'x 51 (2d Cir. 2019) (collecting cases).

> ii.  <u>MSPP Fails To Adequately Plead Any Underlying Predicate Acts</u>

MSPP's RICO claim also fails because it has failed to plausibly allege any of the predicate acts under 18 U.S.C. § 1961(1). At most, MSPP conclusorily alleges that "Defendants committed multiple acts that are indictable under at least 18 U.S.C. § 1832, and therefore constitute racketeering activity pursuant to 18 U.S.C. § 1961(1)." (Compl. ¶ 200.)[4] The "multiple acts," according to the Complaint, consist of stealing trade secret information from MSPP and three unnamed "Other Defrauded Victims" (the "ODVs"). (*Id*. ¶¶ 203, 217-18.) These discrete acts of theft allegedly "constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5)." (*Id*. ¶ 219.) However, MSPP's Complaint does not adequately allege that Deloitte committed a single act of trade secret theft.

*First*, MSPP has failed adequately to allege theft of its own trade secrets, because, as explained *supra* § b, MSPP does not adequately allege that it *has* trade secrets or that Deloitte possesses those trade secrets (through theft or otherwise).

*Second*, MSPP's allegations regarding theft of the ODVs' trade secrets do not come close to satisfying the heightened pleading standard for claims that sound in fraud under Rule 9(b).

---

[4] MSPP also makes numerous allegations regarding Deloitte's "defrauding" behavior throughout the RICO claim. Generalized "defrauding," however, is not a recognized racketeering activity under RICO, and therefore cannot serve as a predicate act. *See* 18 U.S.C. § 1961(1) (defining "racketeering activity" under RICO); *see also Vargas v. Choice Health Leasing*, No. 09 Civ. 8264 (DLC), at *18 n.9 (S.D.N.Y. Aug. 26, 2010).

Hon. P. Kevin Castel
April 11, 2025
Page 8

Because MSPP alleges that Deloitte obtained the trade secrets of the ODVs in violation of Section 1832 through *fraud* (*see* Compl. ¶¶ 217-18), the claim must be pleaded with particularity under Fed. R. Civ. P. 9(b).  *See Peel v. cPaperless, LLC*, No. 4:23-CV-02417, 2024 WL 5058609, at *7 (S.D. Tex. Nov. 8, 2024), *report and recommendation adopted*, No. 4:23-CV-02417, 2024 WL 5063667 (S.D. Tex. Dec. 9, 2024) (dismissing theft of trade secrets claim for failure to plead with particularity where plaintiffs failed to identify the "what or how" of the alleged fraudulent acquisition of trade secrets).  MSPP's allegations regarding the ODVs, however, are conclusory and devoid of necessary facts to adequately plead trade secret theft.  MSPP does not allege when the theft took place, name who the ODVs are, or name any other party involved, instead opting to provide only vague identifiers such as "a third party," "a state entity," and "federal agencies."  (*See, e.g.*, Compl. ¶¶ 139, 144, 151.)  Nor does MSPP make any attempt to define what the ODVs' trade secrets were, or provide any detail regarding how Deloitte fraudulently misappropriated said "trade secrets" beyond unsupported, threadbare allegations.  (*See, e.g.*, *id.* ¶¶ 141, 146, 155.)  MSPP's allegations are inadequate to support a claim of trade secret theft through fraudulent means.[5]  "Because [MSPP] has failed to plead the underlying predicate acts under RICO adequately, the claims [should be] dismissed."  *See G-I Holdings, Inc. v. Baron & Budd*, 179 F. Supp. 2d 233, 256 (S.D.N.Y. 2001).

### iii. MSPP Does Not Adequately Allege that the Predicate Acts are Related

Even if the purported Section 1832 predicate acts were sufficiently alleged (and they are not), MSPP's allegations do not support a finding that the predicate acts are "related."

"Because RICO does not apply to isolated or sporadic criminal acts, it has a relatedness requirement in addition to the continuity requirement.  Predicate crimes must be related both to each other (termed 'horizontal relatedness') and to the enterprise as a whole ('vertical relatedness')."  *Reich v. Lopez*, 858 F.3d 55, 60 (2d Cir. 2017) (internal citations and quotation marks omitted).  Predicate acts are related to each other when they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events."  *Highmore Fin. Co. I, LLC v. Greig Companies, Inc.*, No. 21 CIV. 11021 (AT), 2023 WL 4865722, at *6 (S.D.N.Y. July 31, 2023) (internal quotation marks omitted).

The Complaint fails to plead such related acts.  MSPP does not allege any facts supporting that the theft of MSPP's trade secrets and the theft of the ODVs' trade secrets are related to each other, or related to an enterprise.  *At most*, MSPP alleges isolated acts of wrongdoing by Deloitte, which is not sufficient for a RICO claim.  *See Reich*, 858 F.3d at 61-62 ("If every crime done by any employee of a large, ramified corporation was deemed horizontally related, it would be child's play to plead RICO actions against those companies notwithstanding that the crimes themselves might be 'isolated' and otherwise unrelated.").

---

[5] MSPP's allegations are so threadbare that MSPP does not even meet the plausibility pleading standard under Fed. R. Civ. P. 8(a).  *See Peel*, 2024 WL 5058609, at *8 ("Thus, even if the Court viewed the alleged theft of trade secrets as a non-fraud-based predicate act, Plaintiffs have not plausibly alleged a violation of § 1832 as required to establish a RICO predicate act."); *see also Hirsch v. New York*, 751 F. App'x 111, 115 (2d Cir. 2018).

**SheppardMullin**

Hon. P. Kevin Castel
April 11, 2025
Page 9

MSPP's unsupported, threadbare allegations that Deloitte committed related acts of trade secret theft cannot survive a motion to dismiss, and the RICO claim should be dismissed.

### e.   MSPP Has Not Adequately Pleaded Breach of Contract

The Complaint likewise fails to establish a claim for breach of an oral contract, allegedly related to confidentiality. Even if there were a valid oral contract between Deloitte and MSPP, which there was not, the Complaint itself confirms that there could not have been a breach by Deloitte because the presentation that MSPP holds up as a trade secret or confidential information was, by the time Deloitte allegedly received it (sometime between April 21 and 27, 2020), already in the public domain. As explained *supra* § b, MSPP waived any trade secret or confidential protections for this presentation when Ms. Tate presented it to AIRA on April 21, 2020. There can be no breach where Deloitte never obtained confidential, trade secret information to disclose/misappropriate. MSPP's breach of contract claim therefore fails.

### f.   MSPP's Sherman Act Claim Necessarily Fails

As a preliminary matter, the Sherman Act claim is subject to dismissal because it fails to allege "[a]ntitrust standing," which is a "threshold, pleading-stage inquiry and when a complaint by its terms fails to establish this requirement [the Court] must dismiss it as a matter of law." *Bookends & Beginnings LLC v. Amazon.com, Inc*., No. 21-CV-02584 (VF), 2022 WL 18144916, at *13 (S.D.N.Y. Aug. 24, 2022), *report and recommendation adopted*, No. 1:21-CV-2584-GHW-VF, 2022 WL 4586213 (S.D.N.Y. Sept. 29, 2022). In the Second Circuit, antitrust standing is established by showing (1) antitrust injury, which is "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful," and (2) that the plaintiff is an "efficient enforcer" to assert a private antitrust claim. *See Paycom Billing Servs., Inc. v. Mastercard Int'l, Inc*., 467 F.3d 283, 290 (2d Cir. 2006). MSPP has failed to plead an "antitrust injury" because it has failed to allege "harm to competition"; rather, the only alleged harm is to MSPP. *See id.* at 294. ". . . [A]ntitrust laws were enacted for the protection of competition, not competitors." *Bookends & Beginnings*, 2022 WL 18144916, at *15. The Complaint, however, "gives no indication that Defendants had done anything to harm 'competition as a whole,'" nor provides information regarding any other companies that competed with Deloitte and MSPP in the market. *See LLM Bar Exam, LLC v. Barbri, Inc*., 271 F. Supp. 3d 547, 581 (S.D.N.Y. 2017), *aff'd*, 922 F.3d 136 (2d Cir. 2019). Indeed, throughout the Complaint, MSPP makes abundantly clear that Deloitte was its only existing competitor, and that, but for Deloitte, MSPP would have reaped the benefits of the CDC contract. (*See, e.g*., Compl. ¶¶ 238, 310, 331.) There can be no antitrust injury where, as here, the plaintiff fails to satisfactorily allege that the harm is to competition, rather than the plaintiff itself.

Further, MSPP fails to adequately plead the elements of a claim under Section 2 of the Sherman Act. While MSPP does not specify whether it is asserting a monopolization claim, an attempted monopolization claim, or both (*see id.* ¶ 303), the Complaint does not allege plausible facts to support either claim. For monopolization, a plaintiff must allege "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *PepsiCo, Inc. v. Coca-Cola Co*., 315 F.3d 101, 105 (2d

**SheppardMullin**

Hon. P. Kevin Castel
April 11, 2025
Page 10

Cir. 2002) (internal quotation marks omitted). For attempted monopolization, a plaintiff must allege "(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." *Id*. MSPP's Complaint does not properly allege the relevant market, monopoly power, or anticompetitive conduct needed to survive a motion to dismiss.

*First*, MSPP fails plausibly to allege a "cognizable market." *See LLM Bar Exam,* 271 F. Supp. 3d at 584-85. To survive a motion to dismiss, a Sherman Act plaintiff must define a "plausible" and relevant product market. *See Chapman v. N.Y. Div. for Youth*, 546 F.3d 230, 237 (2d Cir. 2008). MSPP's only attempt to define the market is found at Compl. ¶ 304, where MSPP alleges that market is "the market for a national, federally-adopted mass vaccination application for registering, administering, and reporting COVID vaccinations." (Compl. ¶ 304.) However, a "bald assertion as to a relevant market's existence or definition is insufficient." *Gerding v. Am. Kennel Club*, No. 1:21-CV-07958 (ALC), 2023 WL 4583771, at *4 (S.D.N.Y. July 18, 2023) . Rather, to survive a 12(b)(6) motion, a complaint must "define its proposed relevant market with a reference to the rule of reasonable interchangeability and cross-elasticity of demand, or allege [ ] a proposed relevant market that . . . encompass[es] all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor." *Emigra Grp., LLC v. Fragomen, Del Rey, Bernsen & Loewy, LLP*, 612 F. Supp. 2d 330, 359 (S.D.N.Y. 2009).

*Second*, even if MSPP had adequately defined the market, MSPP fails to allege that Deloitte possesses market power, which is likewise fatal to a monopolization claim. Market power can be established in two ways—(1) pleading that the defendant has power to control prices or exclude competition, or (2) pleading defendant has a predominate share of the relevant market. *See id.* at 361. Here, it appears that MSPP attempts to allege that Deloitte has a predominate share of the relevant market. In order to make this type of showing, a plaintiff must define the relevant market and show the defendant has an excess share of that market. *See LLM Bar Exam*, 271 F. Supp. 3d at 581. The *only* facts that MSPP alleges to support that Deloitte has a predominate share of the "federally-adopted mass vaccination application market" is a news article about a Deloitte-run Medicaid eligibility system. (*See* Compl. ¶ 305.) This article, however, has nothing to do with mass vaccination tracking; rather, the "market" being discussed is the market for Medicaid eligibility tracking systems. Therefore, MSPP alleges no facts whatsoever indicating Deloitte's share of the alleged market for federally-adopted mass vaccination applications, and the Sherman Act claim should be dismissed. *See LLM Bar Exam*, 271 F. Supp. 3d at 584.

*Third*, MSPP has not plausibly alleged predatory or anticompetitive conduct nor willful maintenance or acquisition of the power through anticompetitive conduct, as required for an attempted monopolization and monopolization claim, respectfully. MSPP alleges that Deloitte carried out an "anticompetitive scheme" in which it misappropriated MSPP's trade secrets to procure contracts with the CDC and the U.S. Government. (*See* Compl. ¶¶ 330-32.) As explained *supra* § b, MSPP fails to plead adequate facts to support its claim that Deloitte misappropriated its trade secrets. Further, as noted above, there are no factual allegations in the Complaint that show Deloitte harmed *competition* at all—only that Deloitte allegedly harmed MSPP. MSPP's failure to plead facts showing anticompetitive conduct by Deloitte is fatal to its Sherman Act claim.

**SheppardMullin**

Hon. P. Kevin Castel
April 11, 2025
Page 11

* * *

Based on the foregoing, Deloitte respectfully requests permission to file a Rule 12(b)(6) motion to dismiss. We would be pleased to address these issues before Your Honor at the May 16, 2025 Initial Conference.

Respectfully,

*/s/ Robert S. Friedman*

Robert S. Friedman
for SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


cc:     All Counsel of Record